JUDGE CROTTY                13 CV 6232

DUANE MORRIS LLP
Gregory P. Gulia
Sarah Peyronnel
Joseph A. Powers (prospective *pro hac vice*)
Christiane Campbell (prospective *pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103



Attorneys for Plaintiffs
Polder Housewares, Inc.
and Polder, Inc.

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

POLDER HOUSEWARES, INC., and POLDER, INC.

                              Plaintiffs,

        v.

HONEY-CAN-DO INTERNATIONAL, LLC,

                              Defendant.

**Case No.:**

**COMPLAINT AND JURY DEMAND**

Plaintiffs Polder Housewares, Inc. and Polder, Inc. by their undersigned attorneys, Duane Morris LLP, for their Complaint allege as follows:

<u>NATURE OF THE ACTION</u>

1.      This is an action for patent infringement, trade dress infringement, false designation of origin and unfair competition, under the patent and trademark laws of the United States, and for substantial and related claims of unfair competition, and deceptive trade practices under the state and common laws of the State of New York. Plaintiffs Polder Housewares, Inc. and Polder, Inc. (collectively hereinafter "Polder" or "Plaintiffs") seek a permanent injunction and other equitable relief and damages against Honey-Can-Do International, LLC. Because of Defendant Honey-Can-Do International, LLC's intentional infringement and bad-faith conduct, Polder also seeks enhanced damages and attorney's fees.

2.    Plaintiffs' claims arise from Defendant's manufacturing, marketing, advertising, promotion, distribution and sale of iron rests (hereinafter, the "Infringing Iron Rests") that are nearly identical to Polder's well-known patented iron rests featuring the POLDER® Trade Dress (as hereinafter defined).  Defendant's illegal activities provide the foundation for Plaintiffs' claims under the Lanham Act, 15 U.S.C. § 1051 et seq., the Patent Laws of the United States, 35 U.S.C. § 101 et seq., and the common laws of the State of New York.

JURISDICTION AND VENUE

3.    This Court has jurisdiction under Section 39 of the Lanham Act, 15 U.S.C. § 1121, Sections 1332(a), 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. § 1338(a) and § 1338(b), and under principles of supplementary jurisdiction.  Venue properly lies in this District under Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and § 1391(c), because defendant Honey-Can-Do International, LLC (hereinafter, "Honey-Can-Do" or "Defendant") does business in and/or has substantial contacts with the State of New York and a substantial portion of the events at issue have arisen and/or will arise in this judicial district.

4.    This action arises from Honey-Can-Do International, LLC's transacting business, committing infringement, causing tortious injury and engaging in other activities within interstate commerce, and in New York State, including within the Southern District of New York.

5.    Upon information and belief, Defendant's marketing, distribution and sale of the Infringing Iron Rest throughout the United States, including in New York, through Defendant's website and/or third-party websites, constitute substantial contacts with the State of New York, such that Defendant may reasonably anticipate being brought into a New York court.

2

6.     Upon information and belief, Defendant operates one or more interactive websites on which anyone with access to an Internet connection, including computer users in New York, can click and purchase the Infringing Iron Rest, so that Defendant makes the Infringing Iron Rest available to New York consumers.

7.     This Court has exclusive jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1338 in that the Complaint states an action based on a federal question relating to patents.  Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391(b)(2).  This Court has personal jurisdiction over Defendant because, pursuant to Fed. R. Civ. P. 4(k) and CPLR § 301, Defendant has conducted business and commercial activities in this District, this State and elsewhere in the United States, and Defendant has committed acts of infringement, misrepresentation and unfair competition in this District, this State and elsewhere in the United States.

8.     The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

PARTIES

9.     Plaintiffs Polder, Inc. and Polder Housewares, Inc. are corporations duly organized and existing under the laws of Delaware.

10.     Plaintiffs Polder, Inc. and Polder Housewares, Inc. have places of business at 8 Slater Street, Suite 1, Port Chester, New York and 195 Christian Street Oxford, Connecticut.

11.     Polder is a leading innovator, manufacturer, and seller of practical stylish design housewares including but not limited to, kitchen, bathroom, laundry, ironing and storage products that make daily tasks easier and are offered to the public for sale throughout the United States, including in this District.

12.     Defendant Honey-Can-Do International, LLC is a limited partnership duly organized and existing under the laws of Illinois with its principal place of business at 5750 McDermott Drive, Berkeley, Illinois.

13.     Defendant Honey-Can-Do International, LLC sells home storage and organization products, including housewares such as ironing boards and/or iron rests that compete with ironing stations and/or iron rests that Polder sells.

## FACTS

14.     Polder manufactures a wide variety of housewares products that are distributed and sold throughout the United States.  Polder is a national leader in the housewares industry, including laundry and ironing products.  Polder started manufacturing and selling ironing boards and/or iron rests in 2004.  Polder has developed new, distinguishable and unique designs for the different features of its ironing products, including but not limited to, for its iron holsters or ironing rests.

15.     Polder is a quintessential consumer-oriented American manufacturing company. Polder offers products that make daily tasks easier while offering quality, value and elegant design, as evidenced by Polder's tagline "Life meets Style."  Polder holds its products and manufacturing methods to high standards to ensure that its products will be of the highest quality.

16.     Polder's products, such as the Polder's Deluxe Ironing Station that incorporates Polder's patented Iron Rest design are available for sale on Polder's website located at www.polder.com, as well as distributed in a wide variety of stores and store chains, including but not limited to The Container Store, Ace Hardware, Bed Bath & Beyond, Hold N' Storage, Organize It, and Costco.

4

17.     Polder has invested significant amounts of time and effort and considerable financial resources over the years to maintain the highly regarded image of its POLDER® ironing products and control the quality of its goods.  As a result of these activities, Polder enjoys a reputation as a manufacturer and distributor of the highest quality goods, so that when consumers see the POLDER® Trade Dress (as hereinafter defined), they recognize that the iron rest sold in the POLDER® Trade Dress will be of the highest quality.  As a result of these efforts, sales of Polder's iron rests sold in the POLDER® Trade Dress have been enormous and the POLDER® Trade Dress is famous and symbolizes the enormous amount of goodwill of Polder.

**Polder's Iron Rest**

18.     Polder developed and introduced in 2004 an iron rest that feature a highly distinctive design (hereinafter, the "POLDER® Patented Iron Rest").  Polder owns the iron rest design (hereinafter, the "POLDER® Patented Design") and trade dress (hereinafter, the "POLDER® Trade Dress") for its iron rests.  The POLDER® Patented Design and POLDER® Trade Dress are evident in the image below and the POLDER® Patented Iron Rest, featuring such distinctive design and trade dress, was the first of its kind.




FIG. 2

5

19.     The United States Patent and Trademark Office granted a design patent covering the design of the POLDER® Patented Iron Rest, United States Design Patent No. D502,581 ("the '581 Patent"), which issued on March 1, 2005.  Polder owns the '581 Patent by assignment. A copy of the '581 Patent is attached as Exhibit A.

20.     Since 2004, Polder has continually used in commerce the POLDER® Patented Iron Rest, which has proven to be a significant commercial success.

21.     The non-functional aesthetic features of the POLDER® Patented Iron Rest, taken together, create a distinctive visual impression to the consumer.  A photograph of the POLDER® Patented Iron Rest is attached as Exhibit B.

22.     Polder's current trade dress for its POLDER® Patented Iron Rest comprises the combination of at least the following elements:

a.     The POLDER® Patented Iron Rest is an appliance accessory made of formed steel and plastic that attaches to the rounded wide end of a standard ironing board.

b.     The measurements and scale of the features of the iron rest are part of the POLDER® Trade Dress.

c.     The bottom side of the frame of the POLDER® Patented Iron Rest has been constructed and molded with a concave curve.  When the bottom side of the frame of the POLDER® Patented Iron Rest is properly attached to the rounded wide end of a standard ironing board, the concave curve of the POLDER® Patented Iron Rest is flush against the rounded wide end of the ironing board.

d.     The opposite top side of the frame of the POLDER® Patented Iron Rest is rounded with a convex wide parabolic curve that mirrors the rounded wide end of a standard ironing board.  This topside of the frame of the POLDER® Patented Iron Rest contains a large circle indentation in which the POLDER® trademark is carved as well as two symmetrical bended oval-shaped slots positioned adjacent to the circle indentation.

e.     The center of the frame of the POLDER® Patented Iron Rest is comprised of a "sideways – H" shaped hole and two metal flaps that are topped with

two heat-proof silicone rubber pads that angle downwards towards the center of the hole. The two heat-proof silicone rubber pads are of a darker color that contrasts with the plate

23.     The POLDER® Patented Iron Rest has a unique size, shape, color or color combinations, and graphics that distinguish it from competing iron rests, and signify to consumers that they are purchasing or about to purchase the high quality products that are the POLDER® Patented Iron Rests.

24.     Polder introduced the non-functional aesthetic features of the POLDER® Patented Iron Rest in 2004 and has used them continuously and exclusively since their introduction. The POLDER® Patented Iron Rest has become famous, and is widely recognized by consumers through continuous and exclusive use, extensive marketing and substantial sales of the POLDER® brand of ironing boards. POLDER® Patented Iron Rests are sold in a large number of stores, and are available to consumers on the Internet, throughout the United States, and worldwide, including the State of New York. The aesthetic features of the POLDER® Patented Iron Rest have become representative to consumers of Polder's unique product configuration and trade dress. Moreover, the POLDER® Patented Iron Rest has been a significant success and a leader among Polder's numerous product offerings. Since 2004, Polder's ironing stations that comprise the POLDER® Patented Iron Rest have generated millions of dollars in revenue.

25.     The POLDER® Patented Iron Rest identifies Polder as the source of the Ironing Board and is associated exclusively with Polder because of its long-standing and continuous use.

**Honey-Can-Do**

26.     Honey-Can-Do is a producer of home storage and organization products in the United States. Honey-Can-Do claims that it offers "stylish, high-quality home storage solutions at an affordable price."

27.     Upon information and belief, Honey-Can-Do recently introduced an iron rest that infringes upon Plaintiffs' POLDER® Patented Iron Rest (hereinafter, the "Infringing Iron Rest").

28.     Upon information and belief, Honey-Can-Do markets and sells ironing boards, including but not limited to the "BRD-02955 Ironing Board with Rest and Shelf" that incorporate Polder's POLDER® Patented Design.

## COUNT ONE
### (Design Patent Infringement, 35 U.S.C. § 271)

29.     Plaintiffs re-allege paragraphs 1 through 28 above and incorporate them by reference as if fully set forth herein.

30.     Honey-Can-Do is infringing the '581 Patent by performing, without authority, one or more of the following acts: making, using, offering for sale, selling within the United States, or importing into the United States the design as claimed in the '581 Patent, in violation of 35 U.S.C. § 271(a).

31.     Honey-Can-Do's infringement of the '581 Patent is willful.  Honey-Can-Do knew of the '581 Patent, and Honey-Can-Do has knowingly and willfully made, used, offered for sale, sold, or imported products that infringe the '581 Patent without authorization from Polder.

32.     Honey-Can-Do has infringed and is still infringing the '581 Patent by making, selling, and using iron rests that embody the patented design, and Defendant will continue to do so unless enjoined by this court.

33.     Honey-Can-Do's infringing of the '581 Patent is causing irreparable harm to Polder.

34.     As a result of Honey-Can-Do's infringing the '581 Patent, Honey-Can-Do is generating revenue to which it is not entitled.

35.     This is an exceptional case, entitling Polder to the recovery of enhanced damages and reasonable attorneys' fees and costs, in addition to an injunction and damages for patent infringement.

**COUNT TWO**
**(Trade Dress Infringement, 15 U.S.C. § 1125)**

36.     Plaintiffs re-allege paragraphs 1 through 35 above and incorporate them by reference as if fully set forth herein.

37.     Honey-Can-Do has copied the POLDER® Patented Iron Rest.  A photograph of Honey-Can-Do's use of the infringing trade dress ("Infringing Iron Rest") is attached as Exhibit C, and a side-by-side comparison of the POLDER® Patented Iron Rest to an Infringing Iron Rest is attached as Exhibit D.  As evidenced by the side-by-side comparison, the Infringing Iron Rest is a nearly identical copy of the POLDER® Trade Dress and the claimed POLDER® Patented Design and is confusingly similar to the POLDER® Patented Iron Rest.

38.     Honey-Can-Do's use of the infringing design and trade dress causes actual confusion between the POLDER® Patented Iron Rest and the Infringing Iron Rest.

39.     The Infringing Iron Rest copies the POLDER® Patented Iron Rest, such that it is substantially the same to (1) the eye of an ordinarily prudent consumer and (2) to Polder's direct customers.  Furthermore, aesthetic features of the Infringing Iron Rest add to this confusing similarity.  This confusion leads Polder's direct customers to believe that they can achieve the same benefits by using the Infringing Iron Rest instead of the POLDER® Patented Iron Rest.

40.     Honey-Can-Do's use of its infringing trade dress occurred after Polder began using the POLDER® Trade Dress, and after the POLDER® Trade Dress had acquired an extensive goodwill and became recognizable to both consumers and Polder's direct customers as identifying Polder as the source of the iron rest that constitutes the POLDER® Trade Dress.

9

41.     Honey-Can-Do has intentionally adopted and is now using colorable imitations of Polder's well-known and protected trade dress in its iron rest, and is doing so with the intent to deceive consumers into believing Honey-Can-Do is affiliated or associated with Polder, and with the intent of causing confusion as to the source of the products offered by Honey-Can-Do.

42.     Honey-Can-Do adopted and began using its infringing trade dress in an attempt to capitalize on the goodwill associated with Polder and the POLDER® Trade Dress.

43.     Honey-Can-Do markets its infringing trade dress in commerce in the United States, including over the Internet at the websites located at www.honeycando.com as well as on major third-party websites.

44.     Honey-Can-Do has acted in bad faith and in disregard for Polder's rights in its trade dress.

45.     Honey-Can-Do's activities constitute a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) in that Honey-Can-Do's activities are likely to cause confusion, to cause mistake or to deceive as to the source of Honey-Can-Do's product and Honey-Can-Do's association with Polder.  Honey-Can-Do has intentionally copied, and therefore willfully infringed, the POLDER® Trade Dress without the authorization of Polder, thereby trading on the goodwill and excellent reputation of Polder.

46.     Honey-Can-Do's infringement of the POLDER® Trade Dress is causing irreparable harm to Polder.

47.     Pursuant to Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, Polder is entitled to an injunction and damages from Honey-Can-Do, including Honey-Can-Do's profits, plus costs and attorneys' fees, and treble damages.

## COUNT THREE
### (Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125)

48.     Plaintiffs re-allege paragraphs 1 through 47 above and incorporate them by reference as if fully set forth herein.

49.     Honey-Can-Do intentionally adopted and is using a colorable imitation of the POLDER® Trade Dress for products which are of the same type as those that Polder offers.

50.     Honey-Can-Do's use of a colorable imitation of the POLDER® Trade Dress in connection with the advertising, promotion, marketing and sales of its iron rests will cause consumers and potential consumers to mistakenly attribute the properties and reputation of Polder products to those of Honey-Can-Do.

51.     Honey-Can-Do's use of the POLDER® Trade Dress to advertise, promote, market and sell Honey-Can-Do's iron rests, constitutes unfair competition, a false representation and a false designation of origin of Honey-Can-Do's products, and constitutes unfair competition, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

52.     As a result of Honey-Can-Do's unfair competition and false designation of origin, Honey-Can-Do has caused and will continue to cause irreparable injury to Polder.

53.     This is an exceptional case, entitling Polder to enhanced damages and reasonable attorneys' fees and costs, in addition to an injunction and damages for infringement.

## COUNT FOUR
### (Common Law Unfair Competition)

54.     Plaintiffs re-allege paragraphs 1 through 53 above and incorporate them by reference as if fully set forth herein.

55.     The POLDER® Trade Dress is inherently distinctive, or at least has acquired secondary meaning associated with Polder.

56.     Honey-Can-Do, without authorization, is using the POLDER® Trade Dress to Polder's detriment and prejudice.

57.     Honey-Can-Do's unauthorized use of the POLDER® Trade Dress is capable of misleading and deceiving the public as to the legitimate origins, manufacture, or ownership of the products to which the POLDER® Trade Dress is applied.

58.     Honey-Can-Do's conduct constitutes common law unfair competition and is causing Polder to suffer irreparable harm, entitling Polder to an injunction in addition to damages.

## COUNT FIVE
### (Deceptive Trade Practices, N.Y. General Business Law § 349)

59.     Plaintiffs re-allege paragraphs 1 through 58 above and incorporate them by reference as if fully set forth herein.

60.     By reason of the acts and practices set forth above, Honey-Can-Do has and is engaged in deceptive trade practices or acts in the conduct of a business, trade or commerce, or furnishing of goods and/or services, in violation of § 349 of the New York General Business Law.

61.     The public is likely to be damaged as a result of the deceptive trade practices or acts engaged in by Honey-Can-Do.

62.     Unless enjoined by the Court, Honey-Can-Do will continue said deceptive trade practices or acts, thereby deceiving the public and causing immediate and irreparable damage to Plaintiffs.  Plaintiffs have no adequate remedy at law.

## DEMAND FOR JUDGMENT

Polder demands judgment against Honey-Can-Do for the following relief:

1.      As for Count One:

a.     a declaration that Polder is the owner of the '581 Patent and that Polder has the right to sue and recover for infringement thereof;

b.     a declaration that the '581 Patent is valid and enforceable;

c.     entry of judgment that Defendant infringes the '581 Patent;

d.     entry of judgment that Defendant willfully infringes the '581 Patent;

e.     a preliminary and permanent injunction against Defendants under 35 U.S.C. § 283, to enjoin from infringing, actively inducing infringement of, and/or contributorily infringing the '581 Patent;

f.     an award of damages against Defendant adequate to compensate Polder for Defendant's infringement of the '581 Patent, trebled to compensate for the willfulness of the infringement, pursuant to 35 U.S.C. § 284;

g.     interest thereon;

h.     a judgment deeming this to be an exceptional case within the meaning of 35 U.S.C. § 285, entitling Polder to an award of costs, reasonable attorney fees, and expenses incurred in this action; and

i.     such other and further relief as the Court may deem just and proper.

2.     As for Counts Two to Five: An injunction permanently enjoining Honey-Can-Do, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Honey-Can-Do from:

a.     using or authorizing any third party to use as a trade dress or symbol of origin the trade dress associated with Polder's iron rests or from using any counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the POLDER® Trade Dress in any manner or form, on or in connection with any business, products or services, or in the marketing, advertising and promotion of same;

b.     making or displaying any statement or representation that is likely to lead the public or the trade to believe that Honey-Can-Do's goods or services are in any manner associated or affiliated with or approved, endorsed, licensed, sponsored, authorized or franchised by or are otherwise connected with Polder;

c.     using or authorizing any third party to use in connection with the rendering, offering, advertising, or promotion of any goods or services, any false description, false representation, or false designation of origin, or

any marks, names, words, symbols or devices which falsely associate such goods or services with Polder or tend to do so;

d.     registering or applying to register as a trade dress or other source identifier or symbol of origin any trade dress or any other mark that infringes or is similar to or likely to be confused with the POLDER® Trade Dress;

e.     engaging in any other activity constituting unfair competition with Polder, or constituting an infringement of the POLDER® Trade Dress, or of Polder's rights;

f.     aiding, assisting or abetting any other party in doing any act prohibited by sub-paragraphs (a) through (e).

3.     A mandatory injunction requiring Honey-Can-Do to recall immediately all products that feature or bear any trade dress that is similar or identical to the trade dress of the POLDER® Patented Iron Rest from all of their distributors, retail establishments or wholesale establishments wherever located; to direct all such distributors, retail establishments or wholesale establishments to cease immediately the distribution, promotion, sale, or use of all products or goods featuring or bearing any trade dress similar or identical to the POLDER® Trade Dress, and to immediately remove them from public access; and to communicate to its customers that the iron rest design used by Honey-Can-Do in connection with the Infringing Iron Rests is the exclusive property of Polder.

4.     A mandatory injunction directing Honey-Can-Do to surrender for destruction all products and goods, advertisements for such, and other related materials in its possession, or under its control, incorporating or bearing simulations, variations or colorable imitations of the POLDER® Trade Dress, used alone or in combination with other words or designs.

5.      A mandatory injunction requiring Honey-Can-Do to immediately surrender for destruction all manufacturing tooling, wherever located and regardless of whether in the possession of Honey-Can-Do or one of its vendors, capable of producing products that feature or bear any designation or trade dress that is similar or identical to the patented design or trade dress of the POLDER® Patented Iron Rest.

6.      Such other equitable relief as the Court deems appropriate to prevent the trade and public from deriving the erroneous impression that any product or service manufactured, sold, distributed, licensed or otherwise offered, circulated or promoted by Honey-Can-Do is authorized by Polder or related in any way to Polder's products.

7.      An Order requiring Honey-Can-Do to file with the Court within 30 days after entry of the judgment, a report in writing, under oath, stating in detail the manner and form in which Honey-Can-Do has complied with the above requirements.

8.      Damages, including, where applicable, increased or enhanced damages for exceptional case or willful infringement, punitive damages, attorneys' fees, costs and expenses.

Polder demands a jury trial with respect to any issues for which there is a right to trial by jury.

Dated: New York, New York
      September 4, 2013

Respectfully submitted,

DUANE MORRIS LLP

By:_____
Gregory P. Gulia
Sarah Peyronnel
1540 Broadway
New York, New York 10036-4086
Telephone: (212) 692-1000
Facsimile: (212) 692-1020

and

Joseph A. Powers (prospective *pro hac vice*)
Christiane Campbell (prospective *pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979 1000
Facsimile: (215) 979 1020

Attorneys for Plaintiffs
Polder Housewares, Inc. and Polder, Inc.

DM2\4448308.5